May it please the court, David Perez, Perkins Cooley, representing plaintiff appellant Harry Coles. Chief, can I reserve three minutes for a moment? You can save whatever's left on your clock there that's not red. Got it. If it turns red, then it's my time. We'll see how much we give you left. This is a civil rights case. Mr. Coles appeals a district court summary judgment order and subsequent trial on his excessive force claim. There are two independent reasons why this case should be returned to the district court for a full trial on the merits. First, the district court misapplied the summary judgment standard by improperly weighing evidence. Counselor, can you just clarify one thing for me that there was a trial on a portion of the issues, right? That is right. And so what did the what was the trial about? What's left? So the district court in its summary judgment order had kind of a trifurcation of the case. He concluded that that violence, the force used to shatter the window and drag Mr. Coles out of the car was reasonable. And so granted summary judgment on that force did not grant summary judgment on the force used once his feet left the car before he was handcuffed and then granted summary judgment on all force use after he was handcuffed. So it was that narrow issue. Was the force used after he was after he was removed from the car reasonable? That was the only thing sent to the jury after they were told, well, all the force used to shatter him was to shatter the window and remove him. And that's that first part that you're primarily focusing on, right? Right. Although I do believe the scope of the remand should cover the entire use of force because the jury wasn't able to really consider the totality of the circumstances. So you want us to basically just ignore the first jury trial and start all over again? I think there's a legitimate question that the jury was told that the force used to remove him from the car was reasonable, meaning that there was a trigger. There was some safety concern that as defense counsel herself mentioned in closing argument, that safety concern didn't end once his feet left the car. You still had to quickly immobilize him, quickly put him in handcuffs. And so if you were justified in shattering the window and dragging him through with a baton by his hands, limbs and hair, of course you were justified in handcuffing him. Now, if you conclude that there was a classic dispute of what actually occurred during that first fragment, that dispute, the scope of the remand should cover the second fragment. Do you have any case law that would suggest that what you've asked for is an appropriate procedure? In all honesty, no, because I haven't really experienced it. We were not able to find the case where a district court at the summary judgment stage used this kind of divide and conquer approach, that trifurcating the excessive force. You're basically asking us to make new procedural law. If we agree with you about your first point, you're asking us to do something essentially entirely new as far as I know. I concede that there is, I, to be honest, I was not able to find a case where this kind of partial summary judgment was granted and then the jury held, you know, was only given this kind of narrow view during the trial. But let's put ourselves in the jury's shoes for one moment. I think you made your point well, and I guess what I'm dealing with is what would you call an appellate judgment notwithstanding the verdict? What would it be? I mean, you're basically nullifying what, was it five days or something like that? It was a lengthy jury trial. You're basically saying, hey, thanks for doing what you did, but we're not going to pay any attention to that. The reason the jury verdict ought to be, you know, also vacated is because the jury verdict was, they were asked the wrong question. The jury was asked, given that it was reasonable to pull him out of the car, was it reasonable to then handcuff him in the manner that they handcuffed him? That was the question that was asked to the jury. The question that should be asked to the jury upon remand is, given the circumstances, the totality of the circumstances, you know, from the moment your lights went on to the moment he was on the pavement putting handcuffs on, was the forced use excessive? Now, that's a different question materially, substantively, and legally, and that's the question the jury ought to consider on remand, because it's very difficult when you think about the fact of totality of the circumstances to ignore what happened before and what happened afterwards. Well, all right. But your whole case really depends upon whether or not the district court, I think at that time with Judge Ezra, committed error in granting partial summary judgment, right? In other words, if we uphold the grant of the partial summary judgment, your whole case is gone, isn't it? There's a legitimate question whether there was attorney misconduct during trial. But, yes, if you conclude that Judge Ezra was correct in trifurcating the excessive force and then was correct in granting summary judgment on the first trial. So that's the underlying question. For your exchange with Judge Smith, it's hard for me to understand the legal basis for your position, because otherwise, I mean, it would really entirely destroy the concept of partial summary judgment. That always happens when partial summary judgment is granted, right? Only the remaining portion of the case goes to trial. And you're saying that shouldn't happen, but that's a different question. And I think you ought to concentrate on whether or not we should overturn the summary judgment then. What I'm asking for, Judge Tshishima, is not – I am not arguing that partial summary judgment is incorrect or, you know, cannot be applied in excessive use of force cases. I'm saying in these circumstances, the line that was drawn at summary judgment was arbitrary, and it was – Your time is running. I think Judge Tshishima is giving you a hint. This is all academic, the remedy, unless you persuade us that the district court was wrong in granting partial summary judgment. So as time is running, you better talk to that issue. The scope of the remedy is going to be irrelevant if you don't persuade us of the first part. The reason partial summary judgment was incorrect in these circumstances was that in order to – Your client, from a reasonable office perspective, your client is pulled over, doesn't stop right away, pulls to a far end of a deserted parking lot. So that's a place where an office of yours is more exposed. If something should happen, there are no motorists going by, it's hard to observe. And then he fails to, or apparently refuses to, get out of the car in order to do so. The officer has indications that this might be a felony because it's a car that's been reported stolen. Stolen cars are not usually driven by people who have authority to drive them. So it's not – why isn't it perfectly appropriate for the officers to insist that he come out and he doesn't come out to extract him by reasonable means, including breaking the window and dragging him out? So to get to the summary judgment on that first fragment, taking the evidence in the light most favorable to Mr. Coles, the non-moving party, and resolving all conflicts for him, the most that can be said is that the crime was a property crime, not a crime of violence. While he did not immediately get out of the car, he did try to diffuse the situation. He was responsive. He did comply with orders. He had no place to go. He didn't comply with orders. He was told to get out of the car. He didn't comply with that. Right. So the officer – the pace of events here is very important. Sorry? The pace of events here is very important. The officer – He didn't stop when the red lights were flashed. He kept moving. Right. That's first failure to follow orders. He moves to a location that is more dangerous to the officer than if he had stopped to begin with, and then he is told to move out of the car, and he fails to do that. He doesn't show his hands, so who knows what he is doing underneath there? So at the moment – the hands question actually is a big factual dispute in this case. At the moment Officer Eagle shattered the window, that very precise moment, Mr. Coles' hands – both hands were on the steering wheel, and he was staring straight ahead because he had looked over at the officer and said, I can't open the door. The door is locked. I can't find the door. So he was audible. The officers and both officers acknowledged hearing that, and then he says, I put both my hands on the steering wheel, and I stared straight ahead. He looks here, and he sees Officer Robertson's – the second officer's gun pointed squarely at him. He looks straight ahead. At that very moment, Officer Eagle shatters the window. He doesn't try to diffuse the situation. He shatters the window, and then they proceed to drag him out. Now, where the hands were placed is very critical because if his hands – if Mr. Coles is correct and his hands were on the steering wheel at that precise moment, you can see he doesn't carry a weapon. Now, he did move his hands. Remember, he did move his hands in response to, open the door, open the door, moves his hands in a way that's consistent with opening the door. It wasn't furtive because furtive would be trying to reach underneath the seat or trying to reach in the glove compartment in the back seat. His movement was entirely consistent with the order, open the door, and then the conflicting order, put your hands back on the steering wheel. So he just decided, puts his hands back on the steering wheel. He's paralyzed because this man has a baton, which is a deadly weapon, and a gun pointed right at him, another deadly weapon. He's – in 45 seconds, all of this is occurring. There's no time to think. He puts his hands, stares straight ahead, window gets broken. At that moment, at that moment, you can tell he doesn't have a weapon. At that moment, he's not hostile. At any moment, he's not hostile. He's not aggressive. Counsel, you know, you're, I'm sure, an outstanding trial lawyer, but this isn't a jury. We're a bunch of appellate lawyers who look at the record. Well, your case is that the district judge drew a number of inferences against your client's testimony, right? That's correct. There were six factual disputes and inferences that were found or drawn against Mr. Coles. On summary judgment. On summary judgment, that is correct. And based on those factual disputes that were drawn against him and inferences. Name me one or two that you think are important. Sure. The district court said that he was driving erratically. Mr. Coles was driving slowly. He was driving like two or three miles an hour. You don't consider, on cop-iol only, you don't consider that erratic? Well, he was, he had then, they claimed he sped up into the parking lot. He actually claimed he did not speed up, which indicates he wasn't trying to flee and he went right up against a concrete barrier. But one of the biggest factual disputes is that the district court, the district court found that his hands were out of sight when the officer smashed the window. If his hands were in sight, then you know he's not making a furtive movement and you know he doesn't have a weapon on him. So you have time at that 45-second Bennett mark. And you think the record supports that version? Officer, sorry, Mr. Coles' complaint and Mr. Coles' concise statement of material facts in his declaration, which the district court, although it was unsigned, and said that he, because he was pro se litigant, he was accepting as correctly filed, does support that. And then the sixth one, which is almost irrelevant, he stated, well, Mr. Coles smelled of alcohol. Well, you couldn't have really smelled his breath in any way with the window rolled up, which also raises the question, why not just ask Mr. Coles to lower the window? Why not just wait to diffuse the situation? This, that inference that you had to remove him immediately, there has to be a countervailing government interest to use. Well, these days you can't lower the window. Excuse me? You know, there used to be a time when you could lower the window if your engine was off. You're probably going to, you know, much before your time, but you could actually turn a crank that would lower the window. But I haven't seen one of those cars in years. Right. So to lower the window, he would actually have had to have turned the key. Turn the battery on, yeah. Turn the key. Right, that's true. And no officer would start up the car and take off. So that really was not an option. Agreed. But there was an option to try and diffuse the situation when you know his hands, at the moment you know his hands are on the steering wheel, there was a material issue. In fact, at summary judgment, that factual dispute must be resolved in Mr. Coles' favor. We've got two minutes left. Do you want to say that? Sure. Thank you. Okay. Thank you. We'll hear from the defendants. Thank you and may it please the Court. My name is Curtis Sherwood. I'm Deputy Corporation Counsel with the City and County of Honolulu, representing appellees Robertson and Eagle. Mr. Sherwood, so you get there before I forget. I want to hear your response to Mr. Perez's statement that, well, there was really no countervailing government interest to make it so urgent that he had to It's sort of like do you need to do a high-speed chase immediately as opposed to let the guy run out of gas. What was the urgency of breaking the window at that instant? Well, Your Honor, there are all the six factors that the district court enumerated and specified. Such as? Well, let's start with the most menial of them, and that's this erratic driving that he mentioned. Erratic driving doesn't make it such a heightened emergency situation. You have to break somebody's window. That's why I say it's menial. Give me something that rises to the level of some kind of emergency. Well, the Supreme Court has often said what you should be considering is whether there's a threat of danger to the officers or whether there's a threat of flight by the individual. There's no threat of flight. Actually, there wasn't because they had him boxed in. So there was no threat of flight, so what is there? I mean, what kind of exigent emergency was there? The exigent emergency is that he had a potential weapon with him. No, but if they say keep your hands on the steering wheel, wouldn't that be enough? It would be enough if he complied, Your Honor. Well, that's a disputed fact. He says he did comply. Well, actually, if you read it. And Judge Ezra apparently found against him on that, which may not be proper on some of the judges. I know. He can't make findings of the fact on summary judgment. That's the whole point. That's correct. But if you look at the suppression hearing transcript, Mr. Cole says twice, every time I tried to unlock the car, he told me to put my hands on the wheel. Right. So every time implying there was more than one time. And they told him to keep his hands on the wheel. But he was also told to open the door, right? He was given conflicting instructions. He was told, why won't you open the door? The other guy, keep your hands on the wheel. The only way you arrive at that conclusion is the one leading question that Judge Ezra made to Plaintiff. And he said, right. He didn't offer that on his own. And you won't find it in any of his statements. He didn't have to offer it on his own. It's in the record. It doesn't matter, you know, whose instance it was put in the record. It's in the record. But my point is that, you know, that's conflicting facts. It's not an uncontroverted fact that, you know, he was making furtive movements, that he was, you know, didn't keep his hands on the wheel when he was told to, right? What else is there? At this point in time, perhaps not, Your Honor. But he certainly testified to that at his deposition and at his trial. And I think it's kind of unfair. Testify as to what? That he took his hands off the wheel. Well, I don't think that's contested. But his point is he took it off because he was told to open the door. He was trying to open the door. That's his story. It may be true. It may not be. But that's his story. And then all this time we're praying this Robertson had his gun trained on him, right? And he knew it. So what's the exigency that requires the window to be broken immediately? Your Honor, it's a split-second thing. I know that. But there has to be some exigent circumstances that justifies that. The exigency is the threat to the officers. Well, what is the threat? That's what I'm trying to find out. That he won't obey. He's sitting in a car where the car won't open. He has his hands on the steering wheel except when he's told to open the door. Another officer has a gun trained on him. What's the exigency of breaking the window at that very instant? Well, just because the officer has the weapon trained on him, Your Honor, that does not mean that the threat is vicious. Well, what is the threat? The threat remains to those officers, that he will pull a weapon regardless of whether he does it. Not if he has his hands on the wheel. But he's consistently taking his hands off the wheel. Well, he's taken off a couple times when he's told to open the door. And the testimony is his left hand goes toward the door, right? Goes below, you know, out of view. The testimony is my hands, I took my hands off the wheel, not my left hand. And he's very contradictory about this in his statements. In some statements he says he can't find the lock, the mechanism, he says. I couldn't find the mechanism. Other times he said it doesn't work. If you've been in a rental car, you know, that can be true. I mean, this is a stolen car. It's not his car. So entirely plausible to think that he couldn't find it. Lots of times I can't find a door handle in rental cars. Most of the times they put them, you know, someplace where they're sort of, they won't. It's not in the good old days when they had cranks and they had door handles, you know, stuck out there so you could just open them. You have to go searching for them. They also make it easy on you by locking the doors automatically when you start the car. And, you know, it's, you know, the idea that you can't get out of your car and you have to fumble for a while is really entirely plausible. I don't think we're dealing with a rental car here, Your Honor, in the fact that we're dealing… It's a stolen car. It's really pretty much like a rental car. You know, it's a rental car without the permission of the owner. The point is it's not his car. I mean, your car you might be able to open in a split second because you know exactly how it operates and where it locks and where the door handle is. But if you're dealing with a car that's not your car, entirely plausible. What is he supposed to do when, according to him, he can't find the door lock or he can't get the car to open and the officers give him conflicting orders, one of them being keep your hands on the wheel and then they also order him to open the door. How is he supposed to open the door if he's got his hands on the wheel? How is he supposed to comply with both orders? I mean, that's his story. I mean, that's his story and the jury might not believe him, but why is he entitled to go to the jury and let the jury decide whether… To be honest, Your Honor, I don't think that's his story. That's his response to one question from the judge. Let's say we look at it and we say that's his story. Then you lose. Then we reverse. Let's just accept that as a premise. Now, we can go back and talk about whether that's his story, but just take that as his story. Is that the reverse? I don't think so, Judge. Okay, well, persuade us of that. I don't think that I can offer anything more other than the fact he… Well, then you're going to lose. Then you're going to lose. Why don't you tell us why, if we accept that as his story, why it was not improper for the district judge to rule as a matter of law that this is something the jury can't consider? Well, Your Honor, he could have tried to roll down the windows. How? How do you roll down the window when the officers say, keep your hands on the steering wheel? You know, as well as I do, that there are no windows that roll down anymore. You have to engage an electric switch, which will not operate if the key is off. Right? Right. I mean, the officers live in the real world of today. They deal with cars and with people in cars all the time. They know or ought to know that if your ignition is off, you can't roll down the window. The guys, if they've got a gun trained on him, if they've got him boxed in so he can't move the car, what is the emergency to do this extraordinary procedure? I've never seen this in well over a quarter of a century of judging these cases. I have never seen an instance where the officers felt it necessary to break a window and pull an adult person out the window and kick him in the chest. Your Honor, I just don't see, I don't think what other option they had at that point. And even if they wait, what option do they have five minutes from now? If he's still going to refuse to open the door, they're eventually going to have to break that window. Well, they could give him precise instructions. They could say, okay, keep your left hand on the steering wheel, with your right hand turn the key, but don't crank the engine, and then roll down the window. They could have said that. Or they could have said turn on, you know, keep your right hand on the steering wheel, and with your left hand gently reach down and find the door lock. They could have done that. Or they could have said, you know, stop right there, don't make a movement, we're going to call for backup, and we don't want you to move, we don't want you to take your hands off the steering wheel and keep your fingers in sight until we call for other squad cars, and you're going to just sit there and, you know, freeze in place until we have backup. Now those are all three possible things a rational officer could do. It seems to me that that's three things that a rational jury might think a reasonable officer ought to have done. How does a district judge get authority to make those decisions for a jury? Your Honor, I think what the officers were confronted with was an individual that was not following directions, that he was told to keep his hands on the steering wheel and he simply was not. Is that your story and you're sticking with it? Well, I think the transcripts bear that out, to be honest with you. I wonder if we could look at a slightly different issue here. As part of your defense, you pled that you were entitled to qualified immunity. Correct, Your Honor. The district judge didn't rule on that. And whatever the ultimate truth and decision of the ultimate trier of fact on excessive force, if the officers are entitled to qualified immunity, it kind of takes care of the issue. Do you believe that it would be productive for the parties to further brief the issue of qualified immunity in this matter before it's decided? And if so, why? Because I don't, if respectfully, if Judge Kaczynski's statement is correct, if he hasn't heard of a case like this, then certainly the officers, there's no clear precedent that's been set, no clear rule for them to follow. The fact that I haven't heard of it doesn't mean it doesn't exist out there. I have not been on every case in this Court, but I've never seen a case like this. But the reality is that the concept of qualified immunity, exactly for the reason you indicated, might be something that further briefing might be warranted to see whether that has some impact on this case. Would it not? Yes, Your Honor. But qualified immunity can be waived. And failure to raise in your brief issues of law in your brief is a waiver under longstanding Ninth Circuit precedent. Isn't that your complete answer to Judge Smith? I think that's what you were saying, wasn't it? Well, you didn't argue in your brief in the alternative that you're entitled to qualified immunity, did you? I don't believe we did, Your Honor. Actually, we're not asking for your belief. We're asking for, it's one of those things that's verified. I just looked at the belief and there's nothing there that jumps out. So is that waived? Isn't that issue off the table for purposes of appeal? I'd like to brief the issue, Your Honor. Well, I know you would. No, I'd like to brief that issue as well. What I'm saying is not just qualified. I'd like to brief the waiver issue as well. I'm sorry, is this a motion? Are you moving for, is this a motion to reopen briefing to raise the issue of qualified immunity? Yes, Your Honor. Well, if you wish to do that, you can file a written motion. We've got 48 hours to do it. Okay, Your Honor. And, of course, opposing counsel will get a chance to do that. Can I address some of the other issues? Sure. While you're addressing other issues, why don't you tell me, I've also never seen a case where a district judge has taken a single course of conduct like this and broken it down into two separate violations. I sort of don't get it. The officers are standing there outside, and within the next 60, 120 seconds, they break a window, they physically drag him out of the car, they punch him in the chest. Eventually, he lands somewhere on the outside of the car, and they proceed to manhandle him from there. Why does a district judge get to decide those are two separate claims of excessive force and get to bifurcate this? Well, isn't this the kind of thing where the plaintiff can frame the issue as he wishes and say the whole course of conduct from the time I was sitting peacefully in the car showing my hands to the point when I was handcuffed is one long, not so long, perhaps, episode of excessive force. And district judges can't decide that stuff can't be presented to the jury. I think precisely for the same reason why the court is struggling with the issue of that point in time when the suspect is in the car. I'm not struggling. I don't know who's struggling. I think you're the one struggling. Your Honor, well, at least... I mean, just answer the question. Why does the district court get... Why can't the plaintiff say, look, my claim is this is the excessive force and includes all these things that happen from the point that they shatter the window to the point that I'm in handcuffs. That's my claim. The jury will buy it or not. If you think, as a matter of law, I don't state the claim, fine. But you can't slice off parts of the conduct and say this can't be considered. Where does that come from? How does the district judge get authority to do that? There is precedent for narrowing the issues. Maybe not in the civil rights context, but there is a case out of Southern District, California, National Insurance Company versus FDIC, 977F sub 1051, a 1977 case. Obviously, it's dealing with an earlier version of the federal rules. However, there's at least 20 cases out of the Eastern District of California that also cite that case for the holding that they're able to parse parts of a summary judgment in order to narrow the issues. It sounds like it's time we overrule that case. Why should we follow it? It doesn't help you any to tell us that there are cases that are non-binding that have come the same way. Why don't you persuade us why that is a proper thing for a district judge to do? For the same reason. But, Tom, most of those cases involve separate claims. It's not, as Judge Kaczynski says, splitting a single claim in two. It is splitting a claim in multiple issues, Your Honor, if I can quote to you from that case. I can see where, for instance, you could address a defense or something like that, but you say they just straight on split a single claim in two? Yes, Your Honor. The quote I was going to give you is, quote, the court may grant summary adjudication as to specific issues if it will narrow the issues for trial. As a general statement, that's certainly right. But why is this a specific issue? Because, Your Honor. Why can't plaintiffs say, look, the excessive force, consistence of everything the officer did from the time I'm sitting in my car to the time I'm landing, I'm down there hogtied, and it was all excessive force. They break my window, they drag me out, they kick me, all this stuff. You can't sort of stop in the middle and say. There's two totally different analysis. That's why, to answer your question shortly, Judge, you're looking at it, the court and the Supreme Court said this time and time again, you're looking at it from the vantage point of a reasonable officer in that situation. So at that point in time, the threat is a hidden weapon within the vehicle. As Judge Ezra correctly pointed out, once they have him outside of the vehicle, they know whether or not he has a weapon. They have him under control. At that point, the separation, and I'm glad that you, because I agree with you, that it's bifurcate, it's not trifurcate. I'm not sure where plaintiff gets that from. And it's from the point that he's outside of the vehicle. It's not from the point up until handcuffing. If you read exactly what the jury was instructed, that's exactly what they were instructed. Once he got outside of the vehicle, that's what was the court to determine. And one other point I just want to make really quickly. This did not narrow. Why can't the jury consider how they extracted him in judging whether or not what they did afterwards is reasonable or whether they believe their version? Well, because. So you have to shut your eyes to it. You treat the guy who steps out and opens the door and they gently let him come out. The same way as the guy that they drag out after breaking the window. They certainly heard it all, Judge. They may be instructed not to consider it. We presume the jury's following instructions. Counsel, I have one question. I thought that the car remained running. It did. Okay. Well, that's very different than what the Chief was talking about. He could have rolled down the window, could have done a lot of things if the car was running. It wasn't stopped. I think, if I recall correctly, on the affidavits at the summary judgment stage, he said he turned it off. But at the time that the officers approached the vehicle, the plaintiff himself says he was instructed to turn off the vehicle, and he did so. Okay, so at some point then, everybody's in agreement the car was turned off as opposed to it was continually running. Correct. Okay. All right. That clarifies that. It sounds to me like they stepped on their own feet by telling him to turn off the car, and at that point he can't roll down the window. Why isn't that their mistake? If that's the case, it looks even worse for them because, of course, they know they're dealing with modern cars that don't have cranks, that have electric door locks and electric windows. So then the moment they say turn off the engine, they've pretty much disabled him from rolling down the window, right? I don't think that's correct, Judge, and this may be a technical matter, but I think as long as the battery is still on, you can turn the engine off. As long as you don't turn it all the way, that final click before removing the key. How often do you do that? How often do you sort of turn the key? As a matter of fact, you can't do that. Once the engine is on, you turn it off. It's off. You can then turn it back to the mid position as a technical matter. It's even more difficult if you've got one of those cars with a button. If you've got one of those cars with a button, all you can do is push the button, turn it off, and then you have to take your foot off the brake and push the button in order to have the electrical system on without having the ‑‑ I sat down here in the parking lot of the federal building for a while trying to figure out how to crank down my window without starting the engine. It probably depends on what kind of car it is, right? And what model it is and what year it is. And what year it is, exactly. But we have none of that testimony in the record, right? We don't. We just know that it's a 350Z, and I know that the Model Z has varied from year to year with Nissan. I have got one. Oh, 350Z, that must be a 1979 car. Wow. That goes back a ways. Maybe it does have a crank. It probably does, yeah. I have one other question here. My colleagues have referred a lot to the exigency issue, why it was necessary to move promptly. Is there any case law that can help us on that issue? Under the Graham test, there's nothing said about exigency at all. It's just simply you've got the three factors, you have to consider them. Do you know of any case law that would shed light on this? Not this particular situation. Basically, we need to just evaluate it under the totality of the circumstances. Is that correct? I would argue the totality of the circumstances prior to his removal from the vehicle. Any reason you can think of why they couldn't have said, you freeze in place, what we call backup? Because I think that's equivalent to keep your hands on the wheel, which he did not abide by. I thought there was a dispute on that point, that he said he moves his hand off the steering wheel only when they said unlock the car. That's his story. And therein, perhaps, a material issue of fact. Okay, thank you. You had the better part of two minutes. Mr. Peres. Thank you. I want to talk about the issue in this case, which is a summary judgment order, but two brief points on qualified immunity before we get back. One, it was waived, period. It was what? It was waived, period. Waived because he didn't include it in his opening brief, actually in his responsive brief. But even if it wasn't waived, let's assume novel factual circumstances do not, and this court said this, what, six months ago, novel factual circumstances do not immunize officers because all cases will always at some level be novel. This is not like the Taser cases, which presented a new legal theory. Officers have stops all the time. Officers can't just rip people out of cars without some countervailing government interest. So back to the summary judgment order. This case is about a narrow legal question about who gets to decide. There were many factual disputes in this case. There were many inferences that if you were to draw them for Mr. Coles, it's a different story. And unfortunately, the district court at the summary judgment stage drew a lot of inferences and resolved factual disputes against a non-movement. That's just a very narrow legal question. If we apply the correct summary judgment standard, Mr. Coles, just the way that he applied it on the second fragment, the district court said, this is a classic dispute over what actually happened, and so I'm going to send it to a jury. Again, I take your point, and you may very well be right, about what he did on the partial summary judgment, but I'm concerned, again, about the jury. Your point is that if we agree with you that there was a material issue of fact that's critical and we have to send it back, you're saying that the reality is they need to retry the whole thing. But I suppose, technically, they could just retry the part that you have raised on appeal, not the part that was tried by the jury, right? In the first instance, I do think the jury was asked the wrong question, but alternatively, I must concede that you're correct. If you were to conclude, you could conclude that the jury at least gets to hear if you were to apply the summary judgment standard. Let me say it was the wrong question. I gather it's sort of based on the theory that, I think, along the lines that the Chief inquired into with your opponent, that since this was like a single episode, overall it took only a few minutes, right, from start to finish, that it was unfair for your client not to be able to present the entire background to the jury to help it reach its findings of liability, right? I mean, that's the essence of your appeal on the trial part, isn't it? Yes, Your Honor. Mr. Coles had one claim, one issue, which was excessive use of force on that night. The district court drew a line, right, and he did actually draw two lines that was trifurcated. He drew a line at the moment Mr. Coles' feet left the car, and he drew a line at the moment Mr. Coles was in handcuffs, and he said that middle fragment, well, let's let a jury decide. But after he was in handcuffs and before he was removed from the car, the jury doesn't get to see, doesn't get to consider whether that was reasonable. But also the jury was told that, as a matter of law, it was reasonable to rip him out, so he posed some threat. There was some basis for what the officers were doing, and so if there was a basis for what the officers were doing, there was a basis to quickly put him in handcuffs. So, now, if we were to vacate the summary judgment, then that instruction that the court gave to the jury, that as a matter of law, you know, what the officers did up to this point were legal, would be an erroneous instruction, wouldn't it? That's correct, and although defense counsel states that, well, we haven't challenged the jury instruction, we're challenging the underlying order on which the jury instruction was based, and so if you vacate the summary judgment order, that jury instruction goes away. And so we now get a new trial on the full circumstances, and Mr. Coles would get his day's work. Okay, thank you. I understand your theory. Thank you. Thank you. The case is argued and submitted. We'll next hear argument denied, say, versus win.
judges: Kozinski, Tashima, Smith